UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:18-cr-00553 RWS |
| | ) |
| SARAH LYNN TWEEDIE a/k/a | ) |
| SARAH JAUREGUI, | ) |
| | ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Sarah Lynn Tweedie, represented by defense counsel John D. Stobbs, II, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts VIII and IX of the charge, the Government agrees to move for the dismissal as to the defendant of Counts I, II, III, IV, V, VI, VII, and X at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be

1

brought in this District relative to the defendant's mail fraud, wire fraud, and aggravated identity theft between July 2017 and January 2018, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

### 3. ELEMENTS:

As to **Count VIII (wire fraud)**, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) the defendant voluntarily and intentionally devised a scheme to defraud and to obtain money from another by means of false and fraudulent representations, promises and pretenses (2) with the intent to defraud and (3) in furtherance and execution thereof did send and cause to be sent interstate electronic signs, signals and transmissions.

As to **Count IX (aggravated identity theft)**, the defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understand that the elements of the crime are: (1) the defendant knowingly used the name and credit card account number of J.L.; (2) the defendant knew that the name and credit card account number of J.L. that the defendant used belonged to another person; (3) the defendant used

2

the name and credit card account number of J.L. without lawful authority; and (4) the defendant used the name and credit card account number of J.L. during and in relation to the crime of wire fraud in violation of Title 18, United States Code, Section 1343.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

1. Company "LF" is a comic book publishing company that has its headquarters in St. Louis, Missouri, in the Eastern District of Missouri.

2. In or about April 2017, LF hired the defendant as the controller. Her responsibilities included payroll processing, expense reimbursements, and paying all company bills, including the corporate American Express (AMEX) credit card bills as further described below.

3. Beginning in or around July 2017 and continuing into January 2018, Tweedie knowingly and intentionally devised and executed a scheme and artifice to defraud LF, and to obtain money and property by means of material false and fraudulent pretenses, representations and promises, the scheme and artifice being executed in various ways as described more fully below.

4. LF has an AMEX corporate credit card account, and provides certain employees with their own credit cards for payment of approved, business-related expenses. Employee credit cards are issued in the name of LF but display the name of the individual employee cardholder.

5. LF's corporate credit card account accrues membership rewards points that can be redeemed for cash and other items.

6. The defendant was issued a company credit card ending in 1136 that displayed her former married name Sarah Jauregui ("1136 Card").

7. J.L. is a former LF employee who resigned in approximately September 2017. Prior to her resignation, J.L. was issued a company credit card ending in 1045 that displayed her name ("1045 Card"). Upon her resignation, J.L. handed in her 1045 Card to Tweedie for disposal.

8. It was part of the scheme to defraud that, between approximately July 2017 and January 2018, on one and more occasions, the defendant used both the **1136 Card** and the **1045 Card** to make numerous unauthorized purchases totaling $138,137.68, none of which authorized by LF or were legitimate business expenses. For example,

    a. On or about September 14, 2017, the defendant used the **1136 Card** to purchase a "Gourmia GCM3500 Digital Siphon Artisanal Coffee Machine" (the "Coffee Machine") from Amazon.com for $89.84;

    b. On or about September 16, 2017, the defendant used the **1045 Card** to have Charter internet service connected at her residence in Belleville, Illinois, and then to make a payment to Charter on the account on or about October 11, 2017, in the amount of $165.79;

    c. On or about October 11, 2017, the defendant used the **1136 Card** to purchase a "Harris Tweed Women's Brown Scottish Kilt – Made in Scotland – Green" (the "Scottish Kilt") from Amazon.com for $141.00;

    d. On or about October 12, 2017, the defendant used the **1045 Card** to purchase an Amazon Prime subscription from Amazon-UK at a cost of 7.99 Pounds Sterling, which was billed as $10.56 U.S. dollars;

  e. On or about December 9, 2017, the defendant used the **1136 Card** to pay to FedEx shipping costs totaling $310.91 related to the shipment of a package from Belleville, Illinois, to an individual in Great Britain; and

  f. On or about December 17, 2017, the defendant used the **1136 Card** to purchase a premium seat upgrade on her United Airlines flights from Chicago, Illinois, to Glasgow, United Kingdom, in the amount of $1,239.00.

 9. It was further part of the scheme to defraud that the defendant fraudulently, and without permission, used the LF corporate account to purchase Amazon gift cards valued at approximately $6,400.00, some of which were purchased by redeeming LF's AMEX rewards points.

 10. As the controller, the defendant was responsible for processing payroll for all LF employees, including for herself. This included accounting for employee reimbursement expenses – i.e. ensuring that employees were properly reimbursed for any approved, legitimate business-related expenses that they incurred. Pursuant to LF practice and procedure, employees would be reimbursed their approved expenditures on their next regularly scheduled pay check.

 11. LF uses Integrated Payroll Services (IPS) for payroll processing. In her role as controller, Tweedie was required to log into IPS' cloud-based payroll system using her personal log in, and input payroll data, including hours worked and any legitimate, approved business expenses incurred, for all LF employees. LF's payroll data resides on computer servers physically located in Dulles, Virginia.

 12. At all relevant times, the defendant was authorized an annual salary in the amount of $80,000.

13. It was part of the scheme to defraud that, on or about October 31, 2017, the defendant accessed LF's payroll system and fraudulently, and without authorization, changed her annual salary from $80,000 to $110,000, thereby causing her to be paid approximately a total of $4,615.40 more than what she was authorized in November and December 2017.

14. It was further part of the scheme to defraud that, between approximately August 2017 and December 2017, the defendant accessed LF's payroll system on one and more occasions and caused LF to pay her a total of approximately $16,086.17 under the guise that this total amount represented legitimate and approved employee expense reimbursements. In truth and fact, the defendant did not incur any legitimate and approved expenses to which she was entitled to be reimbursed.

17. On December 17, 2017, within the Eastern District of Missouri and elsewhere, having devised the foregoing scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, namely, the defendant used the 1136 Card to make a $1,239.00 payment to United Airlines to purchase premium seat upgrades for her flights from Chicago, IL, to Glasgow, United Kingdom.

19. On October 11, 2017, within the Eastern District of Missouri, the defendant herein, knowingly possessed, transferred, and used, without lawful authority, a means of identification of another person, to wit, the name and unique electronic identification number of J.L., during and in relation to the commission of the felony offenses of wire fraud in violation of Title 18, United States Code, Section 1343, to wit, the defendant used the 1045 Card in the name of J.L. to make a $165.79 payment to Charter Communications.

20. In total, as a result of the defendant's fraud scheme, she caused a loss to LF of $165,239.25. This total comprises of the following:

|  | Amount |
|---|---|
| Unauthorized AMEX purchases | $138,137.68 |
| Unauthorized Amazon purchases | $6,400.00 |
| Unauthorized increase in salary | $4,615.40 |
| Unauthorized expense reimbursements | $16,086.17 |
| **TOTAL** | $165,239.25 |

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count VIII (wire fraud) is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The defendant fully understands that the penalty provided by law for Count IX (aggravated identity theft) to which the defendant is pleading guilty is mandatory imprisonment of 2 years in addition to the punishment provided for the offense of wire fraud.

## 6. U.S. SENTENCING GUIDELINES (2023 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

7

*Count VII: Wire Fraud*

a. <u>Chapter 2 and 3 Offense Conduct</u>:

(1) <u>Base Offense Level</u>: The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) <u>Specific Offense Characteristics</u>: The parties agree that the following Specific Offense Characteristics apply: **10** levels should be added pursuant to Section 2B1.1(b)(1)(F) because the loss was more than $150,000 but less than $250,000; **2** levels should be added pursuant to Section 2B1.1(b)(10)(A) because the defendant relocated a fraudulent scheme to another jurisdiction to evade law enforcement.

(3) <u>Chapter 3 Enhancement</u>: The parties agree that **2** levels should be added pursuant to Section 3B1.3 because the defendant abused a position of private trust.

*Count IX: Aggravated Identity Theft*

b. <u>Chapter 2 Offense Conduct</u>: The parties agree that, pursuant to Section 2B1.6(a) and 18 U.S.C. § 1028A, the mandatory sentence of imprisonment is a term of 2 years to be served consecutively with any term of imprisonment imposed for Counts ~~I and IV~~ VIII [CRJS ST handwritten]. The parties further agree that neither Chapter Three (Adjustments) nor Chapter Four (Criminal History and Criminal Livelihood) apply to a conviction on Count VI~~II~~ (Count 8) [JS ST handwritten].

c. <u>Chapter 3 and 4 Adjustments</u>:

(1) <u>Acceptance of Responsibility:</u> The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby

8

permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Adjustment for Certain Zero-Point Offenders:** If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

(3) **Other Adjustments:** The parties agree that the following additional adjustments apply: None.

c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is **18** unless a two-level reduction under Section 4C1.1(a) applies based on the Court's determination of the defendant's criminal history. The parties agree the Court shall impose a mandatory sentence of **2 years** imprisonments to be served consecutively with any term of imprisonment imposed for Count VIII (wire fraud).

d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

9

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

        (1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

        (2) **Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

    b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment, which is $165,239.25.

g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest

the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $165,239.25. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

13

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or

14

coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

5/15/2024
Date

_____
KYLE T. BATEMAN
Assistant United States Attorney

5/15/2024
Date

_____
SARAH LYNN TWEEDIE
Defendant

6-15-24
Date

_____
JOHN D. STOBBS, II
Attorney for Defendant